**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bill Fred HAMILTON, Defendant– Appellant.**

**No. 96–6250.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1997.

Decided Nov. 4, 1997.

Rehearing Denied Nov. 26, 1997.

---

William M. Scalf (argued and briefed), Corbin, KY, for Defendant–Appellant.

Thomas L. Self (argued and briefed), Asst. U.S. Attorney, Office of the U.S. Attorney, Lexington, KY, for Plaintiff–Appellee.

Before: MARTIN, Chief Judge; CONTIE and DAUGHTREY, Circuit Judges.

CONTIE, Circuit Judge.

## OPINION

Defendant-appellant, Bill Fred Hamilton, appeals his jury conviction for failing to file

and filing false income tax returns. For the following reasons, we affirm.

## I.

This is an appeal of a criminal conviction of Bill Fred Hamilton for willfully filing false United States income tax returns. Defendant was charged with failing to include gross income from the sale of coal on his income tax returns, which he signed under penalty of perjury. His defense was that the cash traced to him by the United States was not income, but rather was "just cash that flowed through his hands."

Bill Fred Hamilton and his wife, Connie Hamilton, were indicted by a federal grand jury on April 7, 1994 for violations of the Internal Revenue laws. Counts One and Two charged defendant and his wife with making and subscribing a false joint United States individual income tax return under penalties of perjury for the calendar years 1987 and 1988 in violation of 26 U.S.C. § 7206(1). Counts One and Two charged that Hamilton and his wife received substantial income for the sale of coal which they failed to report on their returns for the calendar years 1987 and 1988. Count Three charged defendant with failing to make an income tax return for the calendar year 1989 in violation of 26 U.S.C. § 7203.

On May 6, 1994, defendant Hamilton appeared before the district court for arraignment and entered a plea of not guilty to each count of the indictment. On the same date, the court entered an order setting forth orderly procedures to be followed during discovery pursuant to Fed.R.Crim.P. 16(b), which stated specifically:

> The defendant *within ten days after arraignment,* the United States attorney and the defense counsel shall confer and, upon request, the defendant shall produce all items discoverable pursuant to Rule 16(b).

(emphasis added). A trial date was set for September 6, 1994. On October 3, 1994, the first counsel whom defendant retained withdrew, and the trial was continued until Oc-

tober 16, 1995. On October 30, 1995, the second counsel whom defendant retained withdrew. The trial was rescheduled for January 29, 1996. The case was reassigned to a different judge, and the trial was then scheduled for May 21, 1996 before the United States District Court for the Eastern District of Kentucky.

At trial, the United States demonstrated that for 1987, defendant and his wife filed a joint United States income tax return that reported an adjusted gross income of $21,-386. In 1988, they filed a joint return which listed total income of $21,840. The Internal Revenue Service ("IRS") had no record of defendant filing a return for 1989. The United States then introduced through corporate officers, bank officials, tellers, and others, evidence establishing that during the years 1987 through 1989, defendant on a regular basis would personally cash checks in amounts of slightly less than $10,000, made payable either to other individuals or to "cash" at various banks. This testimony was given during the first five days of trial and concerned the distribution of proceeds from the sale of coal by various small coal companies. The government alleged that a large amount of the sale proceeds was income for defendant, which he failed to report on an income tax return for the calendar years of 1987, 1988, and 1989.

On May 29, 1996, at the beginning of the sixth day of trial, counsel for defendant announced for the first time that he had an exhibit list to tender to the court. No exhibits by defendant had previously been furnished to the United States although it had been over two years since the United States had requested discovery of any defense exhibits. On the sixth day of trial, defendant proposed to introduce twenty-three cash receipts to prove that he used the cash he received from the Heart and Soul Coal Company checks to pay for coal for the account of the Heart and Soul Coal Company. The amount of the receipts added up to over $240,000.[1] Defendant provided the United States with a list and copy of the twenty-

---

1. In 1988, the government attributed a total amount of $542,106 to defendant as unreported gross income. Of that total amount, $241,604.31

was for cash received upon the cashing of checks written to cash by the Heart and Soul Coal Co.

three proposed exhibits, consisting of twenty-three original receipts' dated April 1988 through November 1988. The receipts had the original signatures of seven different persons, none of whom had been called as witnesses at trial, and whose names did not appear on any of the checks introduced by the United States as having been cashed by defendant or his wife.

The United States objected to the introduction of this evidence on the grounds that defendant failed to comply with the court's discovery order of May 6, 1994, and Fed.R.Crim.P. 16(b). The district court sustained the United States' objection and ordered that the exhibits could not be introduced. The court also ordered that the exhibits be turned over to the United States for analysis to see if the receipts had been fabricated, based in part on a sealed pleading of one of defendant's former counsel, Ms. Butcher.[2] The court stated that it had reason to believe the receipts had been fabricated. The court then read into the record the sealed pleading, which, in part, stated that Ms. Butcher had reason to believe that defendant intended to commit perjury upon testifying at trial.

The jury found defendant guilty on all counts of the indictment on May 21, 1996. On June 7, 1996, defendant filed a motion for a new trial along with an affidavit, which stated that exhibits 1–23 consisted of original receipts obtained by defendant in 1988 when he paid cash for coal purchased by the Heart and Soul Coal Company. The affidavit alleged that he did not find the receipts until after the trial had started.

By opinion and order filed July 16, 1996, the court denied the motion, stating:

> The affidavit of Bill Fred Hamilton reveals that the documents in question were within the control of Bill Fred Hamilton, and that he was aware of their existence as early as May 1994. Bill Fred Hamilton waited over two years to obtain and produce the documents. Clearly, his actions were willfully violative of the Court's discovery order, and the sanctions imposed by the Court were appropriate, especially in light

of the information contained in pleading # 50. Therefore, Bill Fred Hamilton's motion for a new trial will be denied.

On September 10, 1996, defendant was sentenced to imprisonment for twenty-seven months, a one-year term of supervised release, and a $125 special assessment. The court also ordered that restitution be paid to the IRS for all income taxes to be judged due and owing for the years 1987, 1988, and 1989. Defendant filed a timely notice of appeal on September 17, 1996.

## II.

We must first decide whether the district court erred: (1) in admitting into evidence the statements of defendant's prior counsel, Ms. Butcher, indicating that she believed defendant would perjure himself if he testified in his own defense; and (2) in relying on this statement as evidence that the receipts were fabricated.

Defendant alleges that the sealed pleading contained a statement by Ms. Butcher that she had reason to believe that "defendant was going to commit perjury upon testifying at trial." Defendant alleges that the filing of the pleading was a breach of the attorney-client privilege of confidentiality. Defendant also contends that the court's reliance upon Ms. Butcher's unsubstantiated statement, without an evidentiary hearing, was a violation of due process and his Sixth Amendment right to cross-examine witnesses against him.

We review the district court's evidentiary rulings, involving an alleged violation of Sixth Amendment rights, under a *de novo* standard of review. *United States v. Lloyd,* 10 F.3d 1197, 1216 (6th Cir.1993), *cert. denied,* 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 147 (1994). Although we do not believe that the sealed filing of such a statement was a breach of the attorney-client privilege of confidentiality, we believe the district court erred when it admitted the statement into evidence and relied upon it for his conclusion that the receipts were probably fabricated. In regard to the attorney-

---

2. The sealed pleading was pleading # 50, which contained the motion of defendant's second attorney, Hon. Jane Butcher, to be relieved as counsel.

client privilege, in *Nix v. Whiteside,* 475 U.S. 157, 162–63, 106 S.Ct. 988, 991–92, 89 L.Ed.2d 123 (1986), the Supreme Court made it clear that a defendant's Sixth Amendment right to the assistance of counsel is not violated when an attorney refuses to cooperate with a defendant in presenting perjured testimony at trial. The Court then reiterated that a criminal defendant's privilege to testify in his own defense does not include the right to commit perjury, citing *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *Id.* at 162, 106 S.Ct. at 991–92. Under Kentucky Rules of Professional Conduct, Supreme Court Rule 3.3, it is provided that:

> A lawyer shall not knowingly .... fail to disclose a material fact to the tribunal when disclosure is necessary to avoid a fraud being perpetrated upon the tribunal.

Because Ms. Butcher was under an obligation to disclose to the court a material fact necessary to avoid a fraud being perpetrated upon the court, we do not believe Ms. Butcher's filing of the sealed pleading violated the attorney-client privilege.

■ However, this does not mean that the district court properly relied on Ms. Butcher's statement that she had reason to believe that defendant was going to commit perjury in concluding that the receipts were fabricated. Ms. Butcher's statement was merely hearsay. Even though Ms. Butcher indicated that she believed defendant was going to commit perjury, this statement was not made under oath, and there is no indication that she knew anything about the receipts or that the perjury defendant allegedly was going to commit was in relation to fabricated receipts. There is no indication in the record why Ms. Butcher believed that defendant was going to commit perjury. Without her testimony under oath, there is no way to evaluate the probativeness of her belief. We believe it was a violation of Fed.R.Evid. 801 and 802 for the district court to read her pleading into the record as a basis for his decision. There is no indication that Ms. Butcher was not available to testify. The district court erroneously offered into evidence and relied on her out-of-court statement for "the truth of the matter asserted"—his belief that the receipts were fabricated. *See United States v. Sherlin,* 67 F.3d 1208, 1217 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996). The statement should not have been admitted into evidence as support for the district court's conclusion that the receipts should be excluded because they were fabricated. However, for the reasons discussed below, this error was harmless.

### III.

■ Defendant also alleges that the district court's rejection of the exhibits concerning the receipts was a violation of his constitutional rights under the Compulsory Process Clause of the Sixth Amendment. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." The clause, thus, provides a defendant with the right to present witnesses and evidence in his defense. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). Defendant alleges that the 23 cash receipts he proposed to introduce through the exhibits prove that the cash he received from the Heart and Soul Coal Company in 1988 was not income, but was used by him to pay for coal for the account of the Heart and Soul Coal Company.

Although the right of a defendant to present exculpatory evidence is fundamental, it is not absolute. *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653–54, 98 L.Ed.2d 798 (1988). In *Taylor,* the Supreme Court found that this right must be weighed against "countervailing public interests." *Id.* at 414, 108 S.Ct. at 655. In *Taylor,* defendant's counsel violated a state procedural rule by failing to identify a particular defense witness before trial in response to a pretrial discovery request. *Id.* at 403–05, 108 S.Ct. at 649–51. The Supreme Court upheld the trial court's exclusion of the defense witness from testifying as a sanction for defense counsel's deliberate failure to identify the witness prior to trial. *Id.* at 416–18, 108 S.Ct. at 656–58. The defense attorney had not identified the witness or sought permission to call him until the second day of trial.

When the trial judge inquired about the failure to identify the witness in compliance with the discovery request, the defense attorney said that although his client had told him about the witness, he had been unable to locate him before trial. The following day, the witness appeared for an offer of proof and told the court that he had met with defense counsel several days before the trial began. *Id.* at 405, 108 S.Ct. at 650–51. Thus, in *Taylor*, the defense counsel had flat-out-lied in telling the court that he had just discovered the witness. The trial judge also had doubts about the witness' veracity, noting that the substance of the witness' proffered testimony differed dramatically from defense counsel's characterization of it. *Id.* at 404–05, 108 S.Ct. at 650–51. The trial judge refused to allow the witness to testify, noting the attorney's willful violation of the discovery rules. The jury subsequently convicted the defendant. After a state appellate court affirmed the conviction, Taylor sought review by the Supreme Court.

The Supreme Court affirmed the preclusion of Taylor's exculpatory witness as a sanction for his attorney's misconduct. The Court first rejected the state's argument that no constitutional concerns are raised when material defense testimony is precluded pursuant to a violation of a rule of court. *Id.* at 407–09, 108 S.Ct. at 652–53. The Court also rejected Taylor's argument that the Compulsory Process Clause creates an absolute bar to the preclusion of such testimony. *Id.* at 410–11, 108 S.Ct. at 653–54. Rather, the Court concluded that a decision on the preclusion of defense testimony must be governed by an inquiry in each case into the defense attorney's justification for his or her failure to comply with applicable rules of court. The Court stated:

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a

> shambles if either party had an absolute right to control the time and content of his witnesses' testimony.... The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.

*Id.*

Although the *Taylor* Court declined to "draft a comprehensive set of standards" to cover all possible cases, it established that, as a general matter, the trial judge must weigh the defendant's right to compulsory process against the countervailing public interests: (1) the integrity of the adversary process; (2) the interest in the fair and efficient administration of justice; and (3) the potential prejudice to the truth-determining function of the trial process. *Id.* at 414–15, 108 S.Ct. at 655–56. The court must consider the nature of the explanation given for the party's failure seasonably to abide by a discovery request pursuant to court rules, the willfulness of the violation, and the relative simplicity of compliance. *Id.* at 415, 108 S.Ct. at 656. If the court determines that counsel's delay in providing timely notice of exculpatory evidence was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence," exclusion is "entirely consistent with the purposes of the Compulsory Process Clause." *Id.* The Court also indicated that evidence of fabrication, in and of itself, justified exclusion. "If a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited." *Id.* at 414, 108 S.Ct. at 655.

In the present case, the district court believed the receipts were fabricated due to Ms. Butcher's statement that she believed defendant would commit perjury, and on this basis, excluded the receipts from evidence. In *Taylor*, the Supreme Court made it clear that evidence of fabrication alone would justi-

fy exclusion, even if the prosecution suffered no prejudice. *Id.* Because the district court determined in its order that the receipts were probably fabricated, it did not discuss the other factors considered in *Taylor.* As discussed previously, the district court erred in relying on Ms. Butcher's statement in concluding that the receipts were fabricated. However, this error was harmless as *Taylor* does not require direct evidence of fabrication in order to justify the exclusion of allegedly exculpatory evidence. Although the likelihood of fabrication is one of the factors to consider under the analysis in *Taylor,* an explicit finding of fabrication is not essential in order to exclude exculpatory evidence. *Id.* at 413–14, 108 S.Ct. at 655–56. We find that the district court's error in regard to the alleged fabrication of the receipts in the present case is harmless, because there are other reasons for excluding the exculpatory evidence under *Taylor,* and there was no need for the district court to rely on Ms. Butcher's statement.

■ We review *de novo* the application of the *Taylor* factors, which involves a legal question. The majority of courts find that *Taylor* requires a balancing test, weighing the defendant's right to present evidence in his defense against countervailing public interests, such as the court's need to preserve the integrity of the trial process. *See United States v. Mizell,* 88 F.3d 288, 294 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 620, 136 L.Ed.2d 543 (1996); *United States v. Levy–Cordero,* 67 F.3d 1002, 1012 (1st Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996); *Bowling v. Vose,* 3 F.3d 559, 561 (1st Cir.1993), *cert. denied,* 510 U.S. 1185, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994); *United States v. Johnson,* 970 F.2d 907, 910–11 (D.C.Cir.1992); *Horton v. Zant,* 941 F.2d 1449, 1466 (11th Cir.1991), *cert. denied,* 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992); *Eckert v. Tansy,* 936 F.2d 444, 446 (9th Cir.1991); *Chappee v. Vose,* 843 F.2d 25, 29 (1st Cir. 1988).

■ When we weigh the factors discussed in *Taylor,* we find the district court properly excluded the receipts, but for different reasons than those stated by the district court.

*Chappee v. Vose,* 843 F.2d at 29–30 (court of appeals may reweigh the elements of the *Taylor* test). Even without Ms. Butcher's statement, it is "reasonable to presume there is something suspect" about the receipts. *Taylor,* 484 U.S. at 414, 108 S.Ct. at 655 (There is "something suspect about a defense witness who is not identified until after the 11th hour has passed."). In the present case, defendant's explanation in his affidavit for failing to inform the prosecution about the existence of the receipts is lame. The affidavit indicated that the exhibits in question were original receipts dated 1988 and that defendant knew of their existence and relevance since that date. However, he alleged he was not able to obtain or produce them until they miraculously appeared a few days before the completion of the United States' case-in-chief. The affidavit indicated that defendant had obtained the receipts when he paid cash for coal purchased by the Heart and Soul Company and then turned them over to either Marion Bryant or Gilbert Moore. Defendant stated that he repeatedly asked these two people to look for the receipts, but Gilbert Moore did not find the receipts until after the trial had started because they were under papers in a box that had been used by his mother-in-law, who occasionally did bookkeeping for him. Defendant was aware of the need to obtain the receipts as early as May 1994, the time of the indictment, yet he alleges he was unable to obtain them for over two years, because they were misplaced. The alleged careless handling of documents so important to his case strains credibility, especially given the fact that defendant failed to proffer the affidavits of either Marion Bryant or Gilbert Moore. Moreover, no mention of the receipts was made at all until the 11th hour in spite of the fact that defendant had numerous opportunities to raise the existence of the receipts as a defense or to ask for a continuance of the trial until the receipts were found. Thus, weighing on the side of exclusion are concerns about the "integrity of the adversary process" and "the potential prejudice to the truth-determining function of the trial process." *Id.* at 414–15, 108 S.Ct. at 656. *See also United States v. Cervone,* 907 F.2d 332, 346 (2nd Cir.1990) (emphasizing the inade-

quacy of the defendant's excuse), *cert. denied,* 498 ·U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991).

The district court also decided to exclude the admission of the receipts from evidence as a sanction for defendant's violation of Fed. R.Crim.P. 16(b). Although Rule 16 does not control this case, it provides a helpful point of reference for our analysis by describing the district court's authority to remedy discovery infractions in· analogous circumstances. *United States v. Russell,* 109 F.3d 1503, 1510 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2525, 138 L.Ed.2d 1026 (1997). Fed.R.Crim.P. 16(d)(2) invests the district court with broad discretion in coping with discovery order violations:

> If at any time ·during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the ,discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such order as ,it deems just under the circumstances.

The rule, thus, expressly provides for excluding evidence as a remedy for discovery violations in appropriate circumstances.

Defendant clearly violated Fed.R.Crim.P. 16(b)(1)(A), which states that upon the government's compliance with a defendant's request for discovery, the defendant shall permit the government to inspect and copy documents and papers within the "possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial." In the present case, over two years before the jury trial began, the court entered an order setting forth the time limits and procedures for the ordinary exchange of discoverable information between the parties pursuant to Rule 16. The order stated that the United States and defense counsel · should confer within ten days of the arraignment, and that the United States was to permit defense counsel to inspect and copy information which Rule 16(a) required to be disclosed.· The order provided that the defendant then had ten days to comply with the United States' request for all items discov-

erable pursuant to Rule 16(b). The same order further provided that no later than seven days prior to trial, counsel was directed to file a list of exhibits with the court.

On May 18, 1994, the United States · met with then counsel for defendant and provided him with copies of ·certain documents and schedules. At this meeting, the United States requested reciprocal discovery pursuant to Rule 16(b). · Thereafter, the United States met with defendant's subsequent counsel, Ms. Butcher, on several occasions, provided discovery to her, and again requested that she provide the United States with reciprocal discovery. Finally, when defendant's third counsel had been retained, the United States met with him on numerous occasions, provided him full and total access to each and every item of evidence, and again requested that it be provided with copies or access to discoverable items under Rule 16(b). It is uncontested that defendant's counsel never objected to any request and never disputed the fact that reciprocal discovery requests were ·made. However, no exhibits were ever furnished to the United States until the· sixth day of trial, over two years after the United States had requested discovery of defense exhibits.

■ When Sixth Amendment rights are implicated in a criminal trial, the .district court's decision to exclude the evidence and impose the harshest sanction for violation of Rule 16(b) is appropriate only if these rights are outweighed by countervailing public interests. *See Russell,* 109 F.3d at 1510–11. As the Supreme Court stated in *Taylor,* if there is evidence .that counsel's failure to provide notice of exculpatory evidence in a timely fashion is a willful attempt to gain a tactical advantage at trial, exclusion is "entirely consistent with the purposes of the Compulsory Process Clause." 484 U.S. at 415, 108 S.Ct. at 656. We believe the record in the present case provides such evidence. Defendant did not attempt to present an exhibit list until. the sixth day of trial, after the United States had presented its case-in-chief. For two years, defendant failed to make any mention that there was a possibility that he would submit receipts although the

United States made repeated requests for discovery. Marion Bryant, one of the persons who allegedly helped look for the lost receipts, had testified at trial the previous week, but she was not asked about any lost receipts. Moreover, this is a case, like *Taylor*, in which defendant could have satisfied the applicable discovery rules with ease. This was not a situation where the defense had no way of knowing of the existence of the receipts or their necessity in corroborating defendant's alibi. Nor was it a situation where the rules in question were abstruse or onerous. The directives of the district court's discovery order were explicit. We find that even if the receipts were not fabricated, failure to make any mention of them for two years until after the prosecution had rested its case-in-chief, and then springing them on the prosecution, unawares, indicates an attempt to unfairly gain a tactical advantage at trial. In *Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), the Supreme Court reiterated its holding in *Taylor* and stated that when a discovery violation amounts to willful misconduct and is designed to obtain a tactical advantage, regardless of whether prejudice to the prosecution could have been avoided by a lesser penalty, the severest sanction is appropriate. *Id.* at 152, 111 S.Ct. at 1747–48.

Finally, we find that failure to comply with the duties of reciprocal disclosure or to give any warning of the existence of the receipts was prejudicial to the government's litigation stance. Although the Court in *Taylor* recognized that a trial judge always has the option of utilizing sanctions milder than an embargo (*e.g.,* granting a continuance or mistrial, levying fines, or instituting disciplinary proceedings), the Court left no doubt that such alternatives will certainly "be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process." *Id.* at 413, 108 S.Ct. at 655. In the present case, allowing the surprise admission of the receipts would have delayed the trial, and worse. The prosecution would have been entitled to a continuance to conduct an investigation and to call additional witnesses. As the court in *Tyson v. Trigg,* 50 F.3d 436, 446

(7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 697, 133 L.Ed.2d 655 (1996), pointed out, "Delay in a jury trial is a serious matter ... and [t]he prosecution's ability to rebut the surprise [evidence] effectively [is usually] less than its ability ... during the case in chief." In the present case, the district court was faced with either having to continue the trial, which was in its sixth day, in a case that was over two years old, or to sanction defendant for his actions by precluding defendant from introducing the receipts. The court's alternative choice of a continuance would have disrupted the trial schedule and harmed the government, which had presented, in its case-in-chief, a wealth of evidence through many witnesses involving complicated financial dealings. As the Supreme Court has stated, the " 'State's interest in protecting itself against an eleventh hour defense,' is ... one component of the broader public interest in a full and truthful disclosure of critical facts." *Taylor,* 484 U.S. at 412, 108 S.Ct. at 654, citing *Williams v. Florida,* 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–96, 26 L.Ed.2d 446 (1970). We believe that in the present case these efficiency and fairness concerns, in combination with the other factors discussed, outweigh defendant's right to compulsory process.

To conclude, although we find that the district court erred in relying on Ms. Butcher's statement in determining that the receipts were probably fabricated, direct evidence of fabrication is not necessary for exclusion under *Taylor,* and the error was harmless. There is sufficient evidence in the record to indicate that under the balancing test articulated in *Taylor,* the receipts were properly excluded, but for different reasons than those stated by the district court. In the circumstances of this case, we believe the integrity of the adversary process, the interests in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process all support the trial court's rejection of the proffered receipts. *Taylor,* 484 U.S. at 414–15, 108 S.Ct. at 655–56. Therefore, the district court's imposition of the harshest sanction

for violation of Fed.R.Crim.P. 16(b) did not violate the Sixth Amendment.

For these reasons, the judgment of the district court is hereby **AFFIRMED.**