NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0839n.06
Filed:  October 11, 2005

Case No. 05-5032

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| AARON BANKS, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

**BEFORE: COLE, ROGERS, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge**.  A jury found defendant-appellant Aaron Banks guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced him to 110 months imprisonment with a two-year period of supervised release.  Banks appeals, arguing that the jury had insufficient evidence to find him guilty and that the district court violated his Sixth Amendment right to present evidence in his defense by precluding him from offering the testimony of an alternate juror.  Banks also argues that his sentence should be vacated and his case remanded for resentencing under *United States v. Booker*.

As explained herein, we affirm Banks's conviction, but vacate his sentence.  There was substantial and competent evidence for a rational jury to find beyond a reasonable doubt that Banks possessed a firearm.  The suppression of the alternate juror's testimony did not violate the Sixth Amendment – the testimony was ambiguous on the issue of witness bias against Banks and its

1

admission into evidence would have prejudiced the truth-determining function of the trial. Moreover, there was other evidence of witness bias elicited by defense counsel. Accordingly, Banks's conviction stands. In sentencing him, however, the district court violated Banks's Sixth Amendment right, and therefore we remand the matter for resentencing under *Booker* and the now-advisory sentencing guidelines.

## I. BACKGROUND

### A. Factual Background

In the early morning of July 20, 2003, Regina Walton and Shunta Johnson were robbed at gunpoint in an apartment complex parking lot in Memphis, Tennessee. Government witnesses provided the following testimony about the robbery:

Candice Harris, Catrina Crutcher, and Steve Martin were hanging out together on July 19, 2003. Driving a mini-van, they met with Banks later that evening. Around 3:00am the next morning, Harris drove the four of them to the parking lot of the Kensington Manor Apartments. Banks told Harris to stop near the car occupied by Walton and Johnson. Banks and Crutcher exited the mini-van and approached the car. Banks had a shotgun. Crutcher and Banks demanded the women's purses, while Banks pointed the shotgun at them. After taking the purses, Crutcher and Banks got back in the mini-van. Shortly after leaving the complex, Crutcher took over as driver.

Walton immediately called the Memphis Police Department ("MPD") for help. An MPD officer went to the apartment complex. Johnson gave the officer a description of the mini-van as

well as the man and woman who robbed them. Walton gave the officer a description of the woman and the mini-van's license plate number.

Soon thereafter, MPD officers stopped a mini-van matching the description and plate number. All four occupants were ordered out of the mini-van; Banks had been sitting in the middle-to-rear of the vehicle. The officers found a .410 shotgun between the left wall and middle seat.

Walton and Johnson gave written statements to the MPD. Walton again described the woman who took the items, but was unable to describe the armed man. Johnson gave physical descriptions of the woman as well as the armed man. Both women picked Crutcher out of a photographic lineup; Johnson picked Banks out of a second photographic lineup.

Harris, Crutcher, and Martin testified for the government. They recounted the robbery and events leading up to it. They denied having any prior knowledge that Banks was armed.

All three witnesses also described their prior relationships with each other and Banks. Harris and Crutcher testified that they were "good," "close" friends with each other since grade school. Crutcher knew Martin since she was 14 years old, while Harris knew Martin for "four, five years." Martin confirmed that he knew the two women, and would hang out with them on occasion. In contrast, Harris and Crutcher had met Banks for the first time just before the robbery. Martin knew Banks from the "Clayborn Homes" projects.

All four of the individuals riding in the mini-van were charged in state court with aggravated robbery. Neither Crutcher, Harris, nor Martin, however, were charged in federal court in connection with the robbery.

3

During a preliminary hearing on the state charges, Johnson identified someone other than Banks as the armed man who robbed her. Later in federal court, she confirmed her original identification of Banks. She explained that her identification of another person during the state preliminary hearing was due to her being anxious and eight months pregnant at the time.

The defense called three witnesses – Andre Banks (the brother of the defendant), Ashley Shaw, and Banks. Andre testified that Banks came to his apartment at approximately 2:15am on July 20. Both Andre and Shaw testified that Banks watched television at Andre's apartment until about 3:40am, when Banks left the apartment to use a pay phone to call his girlfriend.

Banks testified that he left his brother's apartment on the evening of July 19 to play basketball, and returned to the apartment around 2:00am on July 20. After again leaving the apartment around 3:40am, Banks called his girlfriend from a pay phone, but no one answered. According to Banks, he then saw the mini-van, recognized Martin and asked him for a ride to his girlfriend's home. He testified that the police stopped the mini-van shortly after the group left the store. Banks denied any knowledge of the robbery or shotgun.


**B.     Threat to Alternate Juror**

During the middle of the Government's case-in-chief, an incident took place involving one of the alternate jurors, Linda Giles. After leaving the courthouse one day, Giles noticed Harris and Crutcher walking in front of her. Recognizing them from the trial, she slowed down to "let them keep on walking"; as she crossed the street, Crutcher and Harris also crossed the street. Giles overheard one of the women say, "we ought to kill this bitch and they'll think that she committed

suicide." Giles did not approach the two women, and did not hear them say anything else. She had

"a sense" that the two women knew she was a juror. The following day, Giles alerted the court and

counsel of the incident, and confirmed that she did not have any further contacts with the two

women and did not discuss the incident with any of the jurors.

After conferring with counsel, the court excused Giles for cause. Defense counsel

immediately moved for a mistrial, arguing that he "did not believe that [his] client could receive a

fair trial at this point." The court denied the motion, explaining:

> This witness has testified that she has not shared this information with any other
> jurors and so her experience would not taint the jury. She came forward this
> morning before we began court and shared this information. And while these are
> government witnesses, these are the individuals who allegedly were in the van with
> Mr. Banks and participated in the robbery.

Later that day, defense counsel notified the court of his intention to call Giles as a witness.

He argued that Giles's testimony would "go directly to the credibility" and "bias" of Harris and

Crutcher. He further argued that "the acts of those witnesses are always relevant, specifically in

instances of conduct . . . and their contact with a juror is very biased." The judge responded:

> First of all, I don't believe that this witness, Ms. Giles, would have anything relevant
> to add to this proceeding. And while the government called the two witnesses, in the
> jury's mind, these witnesses simply testified about facts that occurred on the evening
> that they were with this client. And from what I understand from these remarks,
> those remarks would more likely be attributed to witnesses trying to engage in
> conduct that might help this defendant. So I don't think it would be helpful, and I
> don't think she has anything relevant to add to these proceedings.

The Government argued that Crutcher and Harris never spoke directly to Giles, and therefore

it was unclear whether the statement was directed towards Giles or someone else. Even if the

testimony was relevant, the Government submitted that the prejudicial effect outweighed any

probative value. The district court agreed, suppressing the testimony based on relevancy and the potential for prejudice against Banks.

### C.     Verdict and Sentence

The jury found Banks guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). During sentencing, the defense objected to the Government's proposed base offense level and cross reference to robbery sentencing guidelines, citing the then-pending Supreme Court case, *United States v. Booker*, 125 S. Ct. 738 (2005), and the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004). The district court rejected the objections, based on then-controlling Sixth Circuit case law. The court determined that Banks's base offense level was 26, his criminal history category was V, and the applicable guideline range was 110 to 137 months imprisonment. The court sentenced Banks at the bottom of the range, 110 months, with a two-year period of supervised release.

Banks subsequently appealed both his conviction and sentence.

## II.  DISCUSSION

### A.     Sufficiency of the Evidence

Banks argues that the evidence introduced at trial was constitutionally insufficient to sustain the jury's guilty verdict. Banks asserts that the testimony of the government's witnesses suffered from several defects, including multiple inconsistencies and bias.

"A defendant claiming insufficiency of the evidence bears a very heavy burden [on appeal]." *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (internal quotations omitted). A criminal conviction is supported by sufficient evidence if a rational jury could find the elements of a crime beyond a reasonable doubt. We must view the evidence in the light most favorable to the Government, giving it the benefit of all inferences reasonably drawn from the evidence. *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005); *United States v. Barnett*, 398 F.3d 516, 521-22 (6th Cir.), *cert. dismissed*, 2005 U.S. LEXIS 5408 (Sept. 20, 2005). We will reverse "a judgment for insufficiency of the evidence 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Barnett*, 398 F.3d at 522 (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

Under 18 U.S.C. § 922(g)(1), the Government had to establish three elements: (a) Banks had a prior felony conviction; (b) Banks knowingly possessed a firearm; and (c) the firearm traveled in or affected interstate commerce. *See United States v. Murphy*, 107 F.3d 1199, 1207 (6th Cir. 1997). Banks stipulated to the first and third elements, so the only element the Government had to prove at trial was whether Banks knowingly possessed a firearm.

There exists "substantial and competent evidence" in the record to support Banks's conviction. One of the victims positively identified Banks as the individual who robbed her at gunpoint. Three of Banks's cohorts independently confirmed the victim's testimony. The MPD found the shotgun near the seat in which Banks was sitting when the officers stopped the mini-van. This and other testimony were more than sufficient to find Banks guilty of being a felon in possession of a firearm.

7

Most of the inconsistencies in testimony raised by Banks are minor and do not address the fundamental facts supporting his conviction. Among other things, Banks points to inconsistent testimony as to who was driving just before the robbery (Harris or Crutcher),[1] how soon after the robbery the mini-van was stopped by the MPD,[2] and whether Crutcher saw Banks's brother "standing" (he is a paraplegic). None of these points were essential factual predicates to the crime of felon in possession. Any inconsistent testimony on these matters went to the credibility of the witnesses and the weight given by the jury to their testimony as a whole. We have consistently held that in cases in which this court is asked to assess the sufficiency of the evidence, we will "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Barnett*, 398 F.3d at 522 (quoting *Wright*, 16 F.3d at 1440).

Banks also directs our attention to Johnson's identification testimony. Of course, this testimony involved matters central to the crime of felon in possession. Johnson testified that she provided police with a description of both the male and female robbers, and picked Banks out of a photographic line-up shortly after the robbery. She reiterated at trial that Banks was the man who robbed her at gunpoint. When questioned about her identification of someone else during the earlier

---

[1]Harris testified that she drove the mini-van just prior to the robbery, while Crutcher gave conflicting testimony on whether she or Harris was driving. It appears from the record that both Crutcher and Harris were switching back and forth as driver throughout the day and evening before the robbery, so it is not surprising that there may have been inconsistent testimony on who was driving just before the robbery. Yet, Harris, Crutcher, and Martin all agree that Harris drove the mini-van as the four left the apartment complex just after the robbery, and that Crutcher took over as driver soon thereafter.

[2]Harris and Crutcher testified the police stopped them within a few minutes of the robbery, while Martin testified it was 45 minutes. Martin's recollection was consistent with the officer's testimony.

state preliminary hearing, Johnson explained that she was eight months pregnant at the time and was anxious about testifying. As her identification testimony at trial was unequivocal, her prior inconsistent testimony during the preliminary examination goes to her credibility as a witness and the consequent weight given to her testimony, rather than the sufficiency of the identification testimony itself.

Finally, on the issue of bias, a review of the trial record shows that the jury had ample opportunity to assess the credibility and possible bias of Harris, Crutcher, and Martin. *See infra* § II.B.2. Again, it is not the role of this court to reassess the credibility of witnesses.

**B.      Exclusion of the Testimony of the Alternate Juror**

Banks next claims that the district court violated his Sixth Amendment right to present favorable evidence by denying his request to present the testimony of the alternate juror. He argues that Harris and Crutcher were biased against him, and this bias would have been shown by their "threats against the juror . . . made in an attempt to intimidate Ms. Giles to find the defendant guilty." He asserts that the threat might have created reasonable doubt in the jury's mind, and therefore the district court erred in denying his request.

**1.      Compulsory Process Clause of the Sixth Amendment**

In general, we review a district court's evidentiary rulings for abuse of discretion. *United States v. Hawkins*, 969 F.2d 169, 174 (6th Cir. 1992). When the ruling involves an alleged violation of the defendant's Sixth Amendment rights, however, we review the constitutional issue *de novo*.

No. 05-5032, *United States v. Banks*

*United States v. Hamilton*, 128 F.3d 996, 999 (6th Cir. 1997) (citing *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993)).

Banks's claim arises under the Compulsory Process Clause of the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Courts have interpreted the clause to require that a criminal defendant have "the right to present witnesses and evidence in his defense." *Hamilton*, 128 F.3d at 1000 (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) ("Our cases establish, at a minimum, that criminal defendants have . . . the right to put before a jury evidence that might influence the determination of guilt." (footnote omitted)). As explained by the Supreme Court, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

Of course, while this right is "fundamental, it is not absolute." *Hamilton*, 128 F.3d at 1000 (citing *Taylor*, 484 U.S. at 410). For example, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor*, 484 U.S. at 410. The Supreme Court summarized the extent and limitation of the right: "The Compulsory Process Clause provides [the criminal defendant] with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Id.*; *see also Chambers*, 410 U.S. at 302 ("In the exercise of [the right to present witnesses], the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.").

10

The Sixth Circuit employs a balancing test to weigh "the defendant's right to present evidence in his defense against countervailing public interests, such as the court's need to preserve the integrity of the trial process." *Hamilton*, 128 F.3d at 1002 (collecting cases). While there is not a rigid, exhaustive checklist to which the court must resort, the Supreme Court has provided guidance. Factors to consider include: (a) "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence"; (b) "the interest in the fair and efficient administration of justice"; and (c) "the potential prejudice to the truth-determining function of the trial process." *Taylor*, 484 U.S. at 414-15; *see also Hamilton*, 128 F.3d at 1001.

### 2.    Integrity of the Adversary Process

Banks cannot establish a violation of his right to compulsory process merely by showing that the district court rejected his request to call Giles as a witness. The Compulsory Process Clause does not require courts to admit evidence that is irrelevant or otherwise unreliable under standard rules of evidence. *See Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). "The defendant's right to compulsory process is itself designed to vindicate the principle that the 'ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.'" *Taylor*, 484 U.S. at 411 (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

To establish a violation, Banks must make some "plausible showing" that the testimony would have been relevant, material and vital to the defense. *Valenzuela-Bernal*, 458 U.S. at 867.

11

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Materiality requires that Banks show that the proposed testimony "might have affected the outcome of the trial" – that is, Banks must have been prejudiced by the suppression of the proffered testimony. *Valenzuela-Bernal*, 458 U.S. at 868 (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). This is a higher threshold than simply showing that the testimony may have provided some conceivable benefit: "the number of situations which will satisfy the [conceivable benefit] test is limited only by the imaginations of judges or defense counsel." *Id.* at 866-67 (footnote omitted). Finally, in order to be "vital," the proffered testimony must necessarily be favorable to the defense. *See id.* at 867; *United States v. Desena*, 287 F.3d 170, 176 (2d Cir. 2002).

The issues of relevancy and favorableness are intertwined in this case, at least in one respect. Banks sought to use the testimony of Giles to show that Harris and Crutcher were biased against him. A criminal defendant should, of course, have an opportunity to expose the bias of a prosecution witness. *See Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999) ("Bias is always relevant in assessing a witness's credibility."). Yet, to establish his Sixth Amendment claim, Banks must show that the proffered testimony would have been *favorable* to him – i.e., that the proffered testimony would have tended to show that the witnesses were biased *against* him.

A close review of the testimony sheds little light on whether it would tend to establish bias for or against Banks. Banks argues that the witnesses' "threats against the juror were made in an attempt to intimidate Ms. Giles to find the defendant guilty." Yet, there is no apparent nexus

between the threat – to kill Giles and make it look like a suicide – and the purported message to her – she will die unless she helps to convict Banks. If, in fact, Harris and Crutcher directed the statement at Giles with the intention of spurring her to vote to convict Banks if given the opportunity, it must be read as an "if . . . then" threat: if Banks goes free, then they will kill her and make it look like a suicide. Yet, Giles testified that all one of the women said was "we ought to kill this bitch and they'll think that she committed suicide." There is nothing in this statement to suggest that Giles can do something – vote to convict Banks – to avoid being killed. Nor does this message necessarily follow from the context of the statement. Defense counsel had the opportunity to explore this matter more closely when Giles testified outside the presence of the jury, but declined to do so other than asking whether the experience would affect her impartiality.

While Banks does not make the argument, one could also argue that if Giles were killed, her death would somehow send a message to the jury to convict Banks. Yet, this is also implausible, given the purported statement that the killing would look like a suicide. If fellow jury members thought that Giles committed suicide, there is nothing to suggest why they would then infer that her suicide was meant to send them a message to convict Banks.

After hearing and watching Giles testify, the district court concluded that her testimony was "more likely [to] be attributed to witnesses trying to engage in conduct that might help [Banks]." Under this interpretation, the jury could have determined that the witnesses were biased in favor of Banks. If so, the jury could have seen them as reluctant witnesses for the prosecution, cutting against Banks's defense theory that the other three people in the mini-van were trying to frame him.

13

All of these inferences are speculative, of course. The statement is, on its face, ambiguous on the issue of bias. Thus, it is not at all clear that the testimony would have been favorable to Banks.

Moreover, even if Giles's testimony could be viewed as tending to show some bias of Harris and Crutcher against Banks, defense counsel elicited other testimony from both of them, as well as Martin, on their possible bias against Banks. The Supreme Court has found that "the Confrontation Clause of the Sixth Amendment requires a defendant to have *some* opportunity to show bias on the part of a prosecution witness." *United States v. Abel*, 469 U.S. 45, 50 (1984) (emphasis added). The Sixth Amendment does not require that the defendant have an unlimited opportunity to show bias. *See, e.g.*, *Desena*, 287 F.3d at 176 (explaining that a defendant must show proffered testimony was not cumulative).

Harris, Crutcher, and Martin all admitted on cross examination that, unlike Banks, they were not being charged in federal court for their involvement in the robbery, although they were facing charges in state court. Defense counsel further attacked Martin's credibility by getting him to admit that he had been found guilty of auto theft just weeks before the armed robbery. With the enhanced sentences imposed on repeat offenders in the federal criminal system, Martin had a significant interest in avoiding a felony conviction for armed robbery. All of this testimony went to the possible bias of the three cohorts against Banks.

Moreover, there was other evidence of bias before the jury. Harris and Crutcher were close friends since grade school. Crutcher and Harris both knew Martin for several years prior to the robbery. Martin confirmed that he was acquainted with the two women, and would hang out with

14

them on occasion. Harris and Crutcher testified that they had never met Banks prior to the evening of the robbery. Using the plausible inference that someone is more likely to lie to help themself, a friend, or an acquaintance than someone he or she hardly knows, this testimony could have also been considered by the jury in assessing the bias – if any – of the witnesses vis-á-vis Banks.

### 3.     Potential Prejudice to the Truth-Determining Function of the Trial

The proffered testimony of Giles is ambiguous as to bias. There is little doubt, however, that her testimony would have made an impact on the jury had Banks been permitted to introduce it. The testimony presented during the trial was fairly prosaic – e.g., how Banks was dressed, where he was sitting in the mini-van, did he leave the vehicle with a firearm, etc. A threat by two of the witnesses to kill a juror would have likely overshadowed the testimony and other evidence given to the jury, prejudicing the truth-determining function of the trial.

### 4.     Banks's Sixth Amendment Right Was Not Violated

Given the ambiguity and highly prejudicial nature of the testimony, as well as the other evidence of possible bias before the jury, the district court did not err in preventing Banks from calling the juror to testify. Moreover, as recounted in § II.A, *supra*, there was more than sufficient evidence of Banks's guilt. "For denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case." *United States v. Reifsteck*, 841 F.2d 701, 705 (6th Cir. 1988) (citation omitted). "'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no

justification for a new trial.'" *Valenzuela-Bernal*, 458 U.S. at 868 (quoting *Agurs*, 427 U.S. at 112-13). Even reading the threat in the light most favorable to Banks, there exists no reasonable doubt of his guilt. Accordingly, the preclusion of the proffered testimony did not violate the Sixth Amendment.

## C.       **Banks's Sentence**

Banks's final argument – that his sentence is unconstitutional under *United States v. Booker* – has merit. Banks sufficiently preserved for appeal his objection to his sentence, and therefore we review Banks's claim under the harmless-error standard. "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless – i.e. any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Where, as here, the district court sentenced a defendant at the bottom of the guideline range, the defendant is entitled to resentencing. *See United States v. Trammel*, 404 F.3d 397, 402-03 (6th Cir. 2005) (holding under a plain-error analysis that a sentence at the bottom of the guideline range was sufficient to entitle the defendant to resentencing). The Government concedes this issue.

Accordingly, Banks's sentence should be vacated and the matter remanded for sentencing consistent with *Booker*.

## III.  CONCLUSION

16

No. 05-5032, *United States v. Banks*

For the foregoing reasons, we affirm Banks's conviction, vacate his sentence, and remand the case to the district court for resentencing.