RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                 *Plaintiff-Appellee,*

    *v.*

DONNA HARDY,

                 *Defendant-Appellant.*

No. 08-5421

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 07-10037-001—James D. Todd, District Judge.

Argued: October 13, 2009

Decided and Filed: November 20, 2009

Before: KENNEDY and ROGERS, Circuit Judges; HOOD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** David W. Camp, LAW OFFICES OF DAVID W. CAMP, Jackson, Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** David W. Camp, LAW OFFICES OF DAVID W. CAMP, Jackson, Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

**OPINION**

_____

HOOD, Senior District Judge. A jury convicted Defendant-Appellant Donna Hardy ("Defendant") of twelve counts of bank fraud and five counts of tax evasion. This

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

appeal arises from the district court's exclusion of defense evidence. The district court found that Defendant had failed to comply with the reciprocal discovery requirement of Fed. R. Crim. P. 16(c) and excluded certain evidence. Defendant filed a Motion for a New Trial, which was denied, and this appeal followed. Defendant appeals on the grounds that the district court erred in excluding evidence and violated her rights under the United States Constitution's Sixth Amendment compulsory process clause. For the reasons which follow, Defendant's conviction is **AFFIRMED**.

## I.    **Factual and Procedural Background**

This case involves the embezzlement of over $250,000 from Defendant's long-time employer, Milan Box Corporation. In 2002, Milan Box Corporation merged with Dedmon Company. Defendant worked for Milan Box Corporation for a short period in 1978 and then again from 1981 until 2004. Defendant had control over the accounting and treasury functions of Milan Box Corporation, although she did not have the authority to sign checks for the corporation.

In June 2003, Tony Hamaguchi, treasurer of Milan Box Corporation, began to review the account activity at Milan Box Corporation's banks and subsequently became aware of unusual activity in the accounts. Mr. Hamaguchi uncovered an unanticipated $81,000 transaction, which he immediately brought to the attention of Milan Box Corporation President Franklin Dedmon.

The $81,000 transaction and suspicious paperwork uncovered during a search of Defendant's office prompted Dedmon to hire Cleston Daniels, a certified public accountant, to conduct an audit. Daniels' audit uncovered additional suspicious activity, including the fact that the Dedmon Company bank account was still open and active, although the Dedmon Company ceased to exist in 2002. When asked about the unaccounted-for checks that Daniels uncovered during his audit, Defendant replied that she had loaned the company money and was paying herself back. Defendant eventually produced some documents that she claimed proved the existence of the loan, but stated

that the rest of the documents were in the possession of payroll clerk Barbara Williams, who was deceased at the time of the investigation.

Defendant claimed that due to Milan Box Corporation's financial difficulties, she began lending the corporation money in $5,000 to $7,000 increments so that Milan Box Corporation could cover its payroll taxes and the plant would not shut down. Defendant stated that she borrowed approximately $86,000 from credit card cash advances at 18% interest in order to lend this money to Milan Box Corporation. She waited several years and began making "repayments" to herself of the claimed $86,000 in principal and additional 18% in interest. Defendant made these payments by transferring money from the Milan Box Corporation bank account to the Dedmon Company bank account and, finally, to her personal bank account.

Auditor Mark Layne testified at trial that there was no record of any loans from Defendant to Milan Box Corporation or the Dedmon Company in either company's financial records. When Layne asked Defendant why the loans were not on the books, she had been unable to provide a satisfactory answer. Several government witnesses testified that they were current or former employees at the banks at which Milan Box Corporation and the Dedmon Company held accounts and knew that Defendant had transferred money from the Milan Box Corporation account to the Dedmon Company account. Defendant testified in her own defense and admitted that she was not authorized to send money out of the Milan Box Corporation accounts, that no one knew she was transferring money, that no one except Barbara Williams (now deceased) knew about the loans to Milan Box Corporation, and that all of the money transferred out of the Dedmon Company account went into her personal checking account.

This appeal stems from a disagreement at trial over a subpoena duces tecum served on Milan Box Corporation. The subpoena was served on Milan Box Corporation the weekend prior to trial. Milan Box Corporation appeared at trial without some of the documents requested in the subpoena. The district court granted a Motion to Compel Compliance with the Subpoena, instructing Milan Box Corporation's counsel that it must make a good faith effort to produce everything requested in the subpoena. The following

day, counsel for Milan Box Corporation returned to the trial with a few additional documents, but stated that all of the other documents requested in the subpoena had been lost or destroyed. At this point, Defendant attempted to introduce into evidence copies of check stubs that she claimed proved the existence of the loan. The original check stubs were included in the documents that Milan Box Corporation represented as lost or destroyed. The government objected, stating that it had never seen the copies of the check stubs and, therefore, Defendant had failed to comply with the reciprocal discovery requirement. Defense counsel stated that Defendant had produced the copies to him only one week prior to trial and that he did not anticipate using the copies at trial. Counsel for Defendant stated that he had planned on using the original documents obtained from the subpoena duces tecum served on Milan Box Corporation, but upon being told at trial that the originals could not be located, decided that he must introduce the copies into evidence because he did not have any other proof of the check stubs.

The district court sustained the government's objection to the introduction of the copies due to Defendant's failure to comply with the reciprocal discovery requirement. The jury returned a verdict of guilty on seventeen counts. The district court denied Defendant's Motion for a New Trial. Defendant was sentenced to forty-four months' incarceration.

## II.    Jurisdiction

The district court had original jurisdiction to hear this case pursuant to 18 U.S.C. § 3231 because Hardy was charged with and convicted of an offense against the laws of the United States, specifically, violations of 18 U.S.C. § 1344 and 26 U.S.C. § 7201. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291, which confers appellate jurisdiction over final orders of the district court.

## III.    Standard of Review

"The applicable standard of review for an evidentiary ruling of the district court where the evidentiary issues relate to a claimed violation of the Sixth Amendment is the

*de novo* standard." *United States v. Robinson,* 389 F.3d 582, 592 (6th Cir. 2004), (citing *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993)).

## IV.     Analysis

Defendant argues that her Sixth Amendment compulsory process clause rights were violated by the district court's exclusion of the photocopies of the check stubs. The Sixth Amendment compulsory process clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. Defendant's Sixth Amendment right to compulsory process was not violated by the exclusion of evidence because the district court has discretion to exclude evidence when one party fails to comply with the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 16(d). Fed. R. Crim. P. 16(b) states that

> [i]f a defendant requests disclosure under Rule 16(a)(1)(E) [disclosure of the government's documents] and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents ... if:
> (i) the item is within the defendant's possession, custody, or control; and
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b). Rule 16 makes it clear that the duty to disclose does not end during the discovery process, but that

> [a] party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:
> (1) the evidence or material is subject to discovery or inspection under this rule; and
> (2) the other party previously requested, or the court ordered, its production.

Fed. R. Crim. P. 16(c). Failure to comply with the reciprocal discovery requirement under Rule 16 may result in a court order forcing the party to disclose the evidence, a continuance, a prohibition on introducing the undisclosed evidence, or "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

The district court followed the clear guidelines for reciprocal discovery in Rule 16. Defense counsel admitted in a bench conference on the record that he had obtained the check stub copies about a week prior to attempting to introduce the copies as evidence. When the district court pressed Defendant's counsel as to why he had not disclosed the copies at an earlier time, he answered with the perplexing logic that he had needed to see the original check stubs (which were requested in the subpoena duces tecum but not produced because they had been lost or destroyed) before he could decide whether he would need to introduce the copies as evidence, and because he could not obtain the original check stubs he would certainly have to introduce the undisclosed copies. This explanation does not adequately elucidate why counsel did not disclose the check stub copies a week prior to trial, when he first received them from his client. Defense counsel later admitted that the copies of the check stubs also included information that reflected negatively on his client and that he was therefore reluctant to turn over the evidence to the government. The district court stated to Defendant's counsel that

> the fact that you had these at least a week ago and didn't send them to Mr. Grinalds [Assistant United States Attorney] seems to me to be a violation of the reciprocal discovery rule . . . You had to have provided these to Mr. Grinalds a week ago if they were documents that you planned on using at the trial. You didn't know for sure that you were going to use them, but you had an indication that they might become necessary, and they're no better today than they were a week ago because the checks weren't there today and they weren't there last week. I'm going to sustain the objection for failure to provide reciprocal discovery.

Joint Appendix, pp. 393-94.

Defendant's argument that her Sixth Amendment right to compulsory process was violated is without merit. Additionally, the district court did not err in excluding the copies of the check stubs. Defendant and her counsel had access to the copies of the check stubs at least one week prior to trial, but wilfully and purposefully chose not to disclose those documents to the government, in clear violation of Fed. R. Crim. P. 16(c). The district court made it clear that had the disputed documents been disclosed to the government when they were obtained, the documents would have been admissible

(assuming there were no other grounds for their inadmissibility).  The check stub copies were not disclosed, however, until the day of trial when defense counsel sought to introduce the copies into evidences.  A proper sanction for failure to disclose, under Rule 16, is exclusion of the evidence.  Fed. R. Crim. P. 16. (d)(2)C).  The district court did not err when it imposed this sanction under the Rule, and even if it did, erroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense.  *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001).

Defendant claims that she did not disclose the copies to the government until after she was made aware that the originals were unavailable because the copies would have been inadmissible under Fed. R. Evid. 1001 prior to that time.  This argument is also unavailing.  Disclosure under Rule 16 depends only on whether "the item is within the defendant's possession, custody, or control" and whether it is one that "the defendant intends to use in the defendant's case-in-chief at trial."  Fed. R. Crim. P. 16(b)(1)(A).  Disclosure under Rule 16 does not depend on the admissibility of the evidence at trial, particularly because decisions on admissibility of evidence are entirely within the province of the court, not the parties, so the parties would not be able to accurately determine prior to trial whether certain evidence would be admissible without a ruling from the court.  If the defendant has control over a document, as Defendant did in this case, and plans to use that document in the defendant's case-in-chief, as Defendant attempted to do in this case, and the defendant has already received discovery from the government, then the defendant is required to disclose the document to the government as soon as the defendant learns of it, subject only to the narrow exceptions in Rule 16, none of which is applicable here.  Fed. R. Crim. P. 16.  Defendant clearly chose not to comply with Rule 16, and thus suffered the consequences provided for in the Rule.

Defendant correctly notes that in *United States v. Hamilton*, this Court stated that "[w]hen Sixth Amendment rights are implicated in a criminal trial, the district court's decision to exclude the evidence and impose the harshest sanction for violation of Rule 16(b) is appropriate only if these rights are outweighed by countervailing public interests." *United States v. Hamilton*, 128 F.3d 996, 1003 (6th Cir. 1997).  However, the

Court in *Hamilton* also stated that "[a]lthough the right of a defendant to present exculpatory evidence is fundamental, it is not absolute." *Id.* at 1000 (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). This Court noted in *Hamilton* that the Supreme Court in *Taylor* directed trial courts to weigh a defendant's Compulsory Process Clause rights against such "countervailing public interests" as "(1) the integrity of the adversary process; (2) the interest in the fair and efficient administration of justice; and (3) the potential prejudice to the truth-determining function of the trial process." *Id.* at 1001 (citing *Taylor*, 484 U.S. at 414-15).

In the instant case, all three factors weigh in favor of affirming the district court's decision to exclude the evidence. Concerns about the "prejudice to the truth-determining function of the trial process" as well as the "interest in the fair and efficient administration of justice" were evident. Defense counsel admitted at trial that he was unsure of the origin of the check stub copies or whether they were even what they purported to be, yet he still proposed to introduce them into evidence to prove that there was a loan from the Defendant to the company. Furthermore, the "integrity of the adversarial process" was at risk here because Defendant and her counsel purposefully withheld this evidence from the government. "[I]f there is evidence that counsel's failure to provide notice of exculpatory evidence in a timely fashion is a willful attempt to gain a tactical advantage at trial, exclusion is 'entirely consistent with the purposes of the Compulsory Process Clause.'" *Id.* (citing *Taylor*, 484 U.S. at 415). Defense counsel was unable to provide the court with adequate reasoning for why he had received the documents from his client only one week prior to trial or why he then waited until the middle of trial to disclose this evidence. It appears from defense counsel's lack of adequate explanation as to the failure to disclose the documents, and his later admission that the check stubs might incriminate his client as well as assist her, that the motivation may have been to gain an advantage at trial by not allowing the government access to evidence tending to prove its case and then later springing that same evidence on the government when it was advantageous for Defendant. This further supports the exclusion of the evidence based on a violation of Rule 16 and our decision in *Hamilton*.

Finally, this Court's decision on whether the exclusion of defense evidence violated the defendant's right to present a defense "depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (citing *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001)). Defendant admitted at trial that she had transferred money from the Milan Box Corporation's account to the Dedmon Company's account and then to her personal account without authorization. The government's case against Defendant was overwhelming and at trial Defendant admitted all of the elements of each offense. Copies of check stubs, which defense counsel admitted were unverified and haphazardly copied and stored, including one which clearly showed that it was recorded in the ledger as being made out to the Internal Revenue Service but in actuality was made out to Defendant, would not have created a reasonable doubt that Defendant had committed the offenses. The district court made no error in excluding the copies of th check stubs from the evidence, but even if the district court did err in excluding the evidence, it was harmless error because the excluded evidence would not have created reasonable doubt.

**V.     Conclusion**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.