NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0165n.06

No. 16-1752

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 16, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RICKIE BELLAMY, JR., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: KEITH, BATCHELDER, and McKEAGUE, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Defendant-Appellant, Rickie Bellamy, Jr., appeals his June 1, 2016 conviction by a jury on Count 3, for being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). Defendant moved for judgment of acquittal at the close of the Government's case, which the district court denied, and Defendant now appeals that ruling. Defendant did not renew his motion at the close of all evidence in the case. On appeal, Defendant also claims that the district court denied him his Fourteenth Amendment due process right to present a defense when it excluded certain photographs from being admitted into evidence. For the reasons set forth below, we **AFFIRM** the district court's conviction.

## I.     Background

Defendant was indicted on June 2, 2015 for two counts: Count 1, possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); and Count 2,

possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). In a superseding indictment, dated January 5, 2016, an additional charge against Defendant was added: Count 3, possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(3).

Defendant proceeded to trial on January 19, 2016. Most of the information presented by the Government at trial was collected by two special agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) – Agents David Salazar and Michael Yott. On May 21, 2015, federal agents arrived at a home located at 17160 St. Aubin Street in Detroit, Michigan, to execute a search warrant and to arrest Defendant's father, Rickie Bellamy, Sr., who had on at least 13 occasions sold heroin to an undercover agent the month prior to execution of the warrant.

Agent Yott testified to going upstairs during the execution of the warrant, and seeing Defendant come out of the southwest bedroom. Prior to the raid, the federal agents did not know Defendant resided at the home. Agent Yott also attested to witnessing another man coming out of the bathroom, and a third man in the hallway. Agents guided the men downstairs, where Agent Yott read them their Miranda rights and recorded the conversation that ensued. The jury was played the recording at trial, and they heard Defendant tell Agent Yott that marijuana and a loaded firearm would be found in his room.

Thereafter, Agent Yott testified that he went into the room he initially saw Defendant come out of, and retrieved various items: a firearm, ammunition, marijuana, marijuana packaging material, a digital scale, and proof of residence for Defendant. The parties stipulated to the fact that the firearm was not manufactured in Michigan, and that it traveled in and affected interstate commerce. A portion of the marijuana was contained in green vials that were labeled with

Defendant's name and medical marijuana card number, while the remainder of the marijuana was contained in small plastic bags. Agent Salazar took photographs of the items recovered.

Subsequently, Defendant was arrested. Agent Salazar attested to the following: "[Defendant] did advise us that [the room] was his bedroom. The room [also did] have a padlock on there, which [Defendant] had the key for, and when we were leaving the location with [Defendant], he asked us if we could padlock the door so no one could enter the room for him." Additionally, Agent Yott testified that Defendant locked the door to the room where the items were seized, and hid the key in a closet, prior to arresting Defendant and taking him downtown.

At the close of the Government's case-in-chief, Defendant moved for judgment of acquittal on all three charges, pursuant to Federal Rule of Criminal Procedure 29, asserting that no rational juror could find beyond a reasonable doubt that the elements of the three charges had been proven. Defendant's motion for judgment of acquittal was denied. (*Id.*)

The next day, Defendant testified. He stated that he was working at Ford Motor Company, in an assembly plant in Flat Rock, Michigan. Consequently, he left his mother's home in Eastpointe, Michigan, and was staying at the St. Aubin Street home, off and on, temporarily. When he was not staying at the St. Aubin Street home, he stayed with his girlfriend. Defendant stated that he usually slept on the couch in the St. Aubin Street home, and not in the bedroom where the items were seized. The reason for this was because, for a period of time, a dog occupied the bedroom, and the room contained animal feces.

Rickie Bellamy, Sr. moved into the home while on probation. According to Defendant, Rickie Bellamy, Sr. cleaned out the bedroom the dog occupied, and resided in the room for about six weeks prior to the raid. He stated that the gun seized in the room belonged to Rickie Bellamy, Sr., and was not in the room prior to his father's arrival at the home.

3

Defendant stated that he regularly uses marijuana to help with his lower back pain and to help him sleep. He also stated he used the digital scale to "[l]ine[] out what [he] was going to smoke for the day or week." Defendant stated that he had slept in the bedroom the night of the raid, but that the bedroom was his father's. He confessed to ownership of the marijuana seized by the agents, as well as the digital scale, but stated several times that the firearm and ammunition belonged to his father. Defendant also stated that the door to the bedroom in which the items were seized did not contain a padlock. Further, he explained that his counsel had asked Defendant to take photographs of all of the rooms upstairs, and the doors, at the St. Aubin Street home. He also stated that he had taken the photographs at 5:45 am, the morning of his testimony, and that the upstairs layout looked the same on the day of the raid.

Thereafter, the Government requested a sidebar, and during the bench conference, Defendant's counsel explained that he intended to introduce the photographs as evidence rebutting the agents' testimony that the door to the room at issue was padlocked. The Government asserted that the evidence should be excluded because Defendant had not complied with Rule 16 of the Federal Rules of Criminal Procedure. The district court excluded the photographs, stating that the photographs were not necessarily probative; were new, having been taken only a few hours prior; and that the court did not see how the photographs would aid the jury. The district court did, however, allow Defendant to preserve the issue for appeal. Afterwards, Defendant again testified that the bedroom door was never padlocked.

At the close of all evidence in the case, Defendant did not seek to renew his motion for judgment of acquittal. The jury returned a verdict of not guilty as to Count 1 and Count 2, but found Defendant guilty of Count 3. Defendant was sentenced on June 1, 2016 to three years' probation. This timely appeal followed.

## II.

Defendant first reasserts his motion for judgment for acquittal, contending that: (1) there was insufficient evidence to support his conviction because he is a "lawful user" of marijuana, given that he possessed a medical marijuana card at the execution of the search warrant; (2) there was no evidence offered at trial supporting an assertion that he was addicted to marijuana; and (3) 18 U.S.C. § 922(g)(3) does not explicitly preempt the Michigan Medical Marihuana Act, MCL §§ 333.264221–.26430.

Defendant did not renew his motion for judgment of acquittal, pursuant to Federal Rule of Civil Procedure 29, at the close of all evidence, which was necessary to preserve his motion for appeal. This Court must therefore review the district court's denial of Defendant's motion for a manifest miscarriage of justice, which exists only if the record is devoid of evidence pointing to guilt. *United States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010) (internal quotations and further citations omitted).

18 U.S.C. § 922(g)(3) prohibits a person "who is an unlawful user of or addicted to any controlled substance" from possessing in or affecting commerce any firearm or ammunition, or from receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *United States v. Ocampo*, 402 F. App'x 90, 103 (6th Cir. 2010) (citing 18 U.S.C. § 922(g)(3)) (internal quotations omitted). "To prove a violation of § 922(g)(3), the Government must establish that a defendant was engaged in a pattern of regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed." *Ibid.* (internal citation and quotation marks omitted). Defendant claims that the Government did not present sufficient evidence that he was an unlawful user of a controlled substance. We disagree.

Defendant's conviction for violating 18 U.S.C. § 922(g)(3), as a result of being an unlawful user of a controlled substance in possession of a firearm, is not devoid of evidence. Defendant asserts that a federal statute prohibiting an unlawful person from possessing a firearm "does not apply to a Michigan resident who has obtained a medical marijuana card from the state absent proof beyond a reasonable doubt that the resident is either an addict or is not compliant with the state's medical marijuana statute."

Defendant's assertion is contrary to federal law. Under 21 U.S.C. § 812, marijuana is a Schedule I controlled substance, "meaning that—as far as Congress is concerned—marijuana has no currently accepted medical use in treatment, and there is a lack of accepted safety for use of the . . . substance under medical supervision." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (rejecting plaintiff's assertion that "because a medical recommendation must be obtained to receive a marijuana registry card, a holder of a registry card who uses marijuana has not used a controlled substance in a manner other than as prescribed by a licensed physician," and is thus a lawful user.) (citing 21 U.S.C. § 812(b)(1)(B) & (C)). Thus, "[n]o physician may legally prescribe marijuana as a matter of federal law," and no user of medical marijuana is using it as a lawful user as prescribed by a licensed physician, notwithstanding MCL 333.26422 *et seq. Lynch*, 835 F.3d at 1099.

Additionally, on September 21, 2011, the ATF issued an "Open Letter to All Federal Firearms Licensees." The letter stated that "any person who uses or is addicted to marijuana, regardless of whether his or her State has passed legislation authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted to a controlled substance, and is prohibited by Federal law from possessing firearms or ammunition." Open Letter to all Federal Firearm Licensees dated September 21, 2011, https://www.atf.gov/firearms/docs/open-letter/all-

ffls-sept2011-open-letter-marijuana-medicinal-purposes/download. While interpretive rules do not add to the substantive law that already exists in the form of a statute or legislative rule, "[t]he Supreme Court has described interpretive rules as materials 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.' " *Lynch*, 835 F. 3d at 1099 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (further citation omitted). Thus, it was against this regulatory and statutory context that Defendant received his medical marijuana card, and therefore, he was on notice of the fact that it was unlawful for him to possess a firearm.

Both parties stipulated that the firearm charged in the indictment traveled in interstate commerce. Further, a recording was played at trial, in which Defendant stated that the officers would find a loaded firearm in his bedroom. He also testified to smoking marijuana on a regular basis. For these reasons, we hold that there was evidence in the record that Defendant engaged in repeated use of marijuana, and that there is evidence that said pattern of use occurred during a period of time in which he possessed the firearm. Therefore, the district court did not create a manifest miscarriage of justice by denying Defendant's motion for judgment of acquittal.

## III.

Defendant next argues that the photographs of the bedroom doors, taken the morning of Defendant's testimony, were relevant as to whether Defendant in fact possessed the firearm. Defendant contends that the photographs were crucial in discrediting the two agents who testified on behalf of the Government and stated that there was a padlock on the bedroom door at issue, and that Defendant had either locked the padlock himself or had asked the agents to do it for him. The district court's exclusion of the photographs, according to Defendant, denied him of his Fourteenth Amendment due process right to present a defense.

"We review all challenges to district court evidentiary rulings, including constitutional challenges, under the abuse of discretion standard." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). But since Defendant frames the evidentiary issue as a violation of a constitutional right, and it is an abuse of discretion "to rest [an] evidentiary decision on [an] incorrect interpretation[] of the Constitution," our review of his legal claim is *de novo*. *Id.*; *see also United States v. Reichert,* 747 F.3d 445, 453 (6th Cir. 2014); *see also United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) (noting that the abuse of discretion standard generally applicable to a district court's evidentiary rulings is not at odds with de novo review of constitutional questions because district courts do "not have the discretion to rest [their] evidentiary decisions on incorrect interpretations of the Constitution"). While the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, this right is not without limits. *United States v. Kessinger*, 641 F. App'x 500, 503 (6th Cir. 2016) (citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)) (further citations omitted). "[A] defendant 'does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *United States v. Kerley*, 784 F.3d 327, 342 (6th Cir. 2015) (citing *Blackwell*, 459 F.3d at 753). Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense. *Baze v. Parker*, 371 F.3d 310, 323–24 (6th Cir. 2004) (quoting *Crane v. Kentucky*, 476 U.S. 682, 689 (1986)) (holding that "the Constitution leaves judges 'wide latitude' to exclude evidence that is only 'marginally relevant.'"). "Unless the particular rule of evidence 'serves no legitimate purpose' or is 'disproportionate to the ends that it is asserted to promote,' a district court's application of the rule to exclude defense evidence will not offend the Constitution." *Kessinger*, 641 F. App'x at 503 (quoting *Holmes*, 547 U.S. at 326). "Exclusion of

evidence is 'unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.'" *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). Therefore, "erroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense." *Kerley*, 784 F. 3d at 342 (quoting *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2009)) (further citation omitted).

Having reviewed the trial transcript, we conclude that the district court's exclusion of the photographs did not violate Defendant's right to present a defense. Defendant testified that the door at issue never contained a padlock, and thus, the photographs would have been cumulative of his live witness testimony. Because there was at least one other avenue of putting his statements and beliefs into evidence, the photographs were not improperly excluded. *See Reichert,* 747 F.3d at 454 ("[O]f course, Reichert had at least one other avenue of putting his own statements and beliefs into evidence: by taking the stand himself."); *see also* Fed. R. Evid. 403 (testimony is properly excluded where it amounts to "needless presentation of cumulative evidence").

Further, even if we were to find the district court erred in excluding the photographs, Defendant cannot show that exclusion of the photographs infringed upon a weighty interest of the accused, given that he cannot demonstrate the photographs were material to his defense or were more than marginally relevant. Evidence is material if its suppression might have affected the trial's outcome. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982). Here, other evidence was offered by the Government to prove Defendant possessed the firearm. The jury listened to an exchange that Defendant had with Agent Yott, in which Defendant stated that there was a loaded firearm in his room. Moreover, Defendant also stated that he knew the firearm was loaded and was accessible to him. Accordingly, notwithstanding whether the door at issue was

padlocked, there was other proof presented to the jury demonstrating Defendant had dominion over the premises where the firearm was located, as well as the fact that Defendant did not deny knowledge of the firearm found in an area under his control. Given this information, there was sufficient proof to allow a jury to conclude Defendant possessed the firearm. *See United States v. Bailey*, 553 F.3d 940, 944–45 (6th Cir. 2009). Accordingly, without more, on this record, there is no indication that the photographs materially advanced Defendant's defense.

## IV.

For the above stated reasons, we find the district court did not create a manifest miscarriage of justice by denying Defendant's motion for judgment of acquittal, and the exclusion of the photographs did not deny Defendant his constitutional right to present a defense. Accordingly, we **AFFIRM**.