**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0460n.06
Case No. 18-2159

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 30, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| RAMIRO HERNANDEZ, JR., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

---

BEFORE: SILER, STRANCH, and NALBANDIAN, Circuit Judges.

**SILER**, Circuit Judge. Ramiro Hernandez appeals his sentence. He argues that the district court erred in finding that he unduly influenced J.P.—a minor—to engage in prohibited sexual conduct and in enhancing his base offense level as a result of that finding. We **AFFIRM**.

I.

In 2017, J.P., a sixteen-year-old female with a drug problem, met Hernandez (age 24) and Michael Clayton (age 31)—both of whom used cocaine. Over a two-month period, J.P. hung out with Hernandez and Clayton at Clayton's residence on several occasions, primarily because they provided her with drugs and alcohol.

Eventually, Hernandez and Clayton decided to prostitute J.P. In pursuit of that objective, Hernandez sought (and found) a man who was willing to pay to have sex with J.P. Hernandez

invited that man to Clayton's residence, and the man paid Clayton and Hernandez in exchange for sex with J.P. All the while, Hernandez and Clayton continued to provide J.P. with alcohol and drugs.

The prostitution scheme came to a halt on October 5, 2017. On that day, J.P.—who had been using cocaine with Clayton at Clayton's residence—told Clayton that she was tired of using cocaine and wanted to go home. Rather than taking her home, however, Clayton retrieved a handgun, pointed it at her head, and told her to continue using cocaine. Scared, J.P. complied. (*Id.*). Later, she discretely used her cell phone to text her family a plea for help. Her father then called the police, who searched Clayton's residence and found J.P. in the basement.

Shortly thereafter, the government charged Hernandez with several offenses related to his relationship with J.P., and he ultimately pleaded guilty to one count of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c).

The PSR showed Hernandez's guidelines sentencing range as between 235 to 293 months' imprisonment. According to the PSR, the probation office adjusted Hernandez's base level offense due to various aggravating and mitigating circumstances. One circumstance used to enhance Hernandez's offense level was the fact that he unduly influenced J.P. to engage in sexual conduct.

Before sentencing, Hernandez objected to the PSR's conclusion that he receive a two-level enhancement for unduly influencing J.P. to engage in prohibited sexual conduct. He argued that the enhancement simply did not apply because he was not present when Clayton threatened J.P., and he never tried to force J.P. to engage in sexual conduct with others in exchange for drugs.

The district court overruled Hernandez's objection and found the enhancement applicable. It based its finding of undue influence on the fact(s) that: (1) the PSR indicated that Hernandez "provided everyone"—including J.P.—"with cocaine," and (2) Hernandez "produced a video"

featuring J.P. "that constituted child pornography." The court also concluded that even if Hernandez did not *directly* subject J.P. to undue influence, Clayton's undue influence of J.P. could be imputed to Hernandez for purposes of applying the enhancement.

Ultimately, the court calculated Hernandez's guidelines range at 121-151 months' imprisonment, and subsequently sentenced him to a term of 120 months.

II.

We review challenges to the application of a sentencing enhancement for clear error. *United States v. Kessinger*, 641 F. App'x 500, 506 (6th Cir. 2016). "A factual finding"—such as the district court's finding that Hernandez unduly influenced J.P.—"is clearly erroneous when, 'though there is evidence to support that finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (citation omitted).

The enhancement at issue in this case—USSG § 2G1.3(b)(2)(B)—provides that the court may increase a defendant's base level if a "participant" in the offense "unduly influence[s] a minor to engage in prohibited sexual conduct." In determining whether the enhancement applies, the "court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." *Id.* application n.3.

Hernandez claims that the district court erred when it found that he unduly influenced J.P. He appears to argue that: (1) the factual findings as set forth in the PSR are insufficient to support a finding of undue influence and, in any event, (2) those findings are contradicted by J.P.'s testimony at Clayton's trial, and, therefore, are unreliable.

We disagree. We have previously found that a defendant unduly influenced a minor to engage in prohibited sexual conduct when the defendant "plied [the minor] with flavored vodka, cigarettes, and marijuana" so as to "ease[]" her into prostitution. *United States v. Jackson*, 627 F.

App'x 460, 461, 464 (6th Cir. 2015) (affirming application of enhancement). And that is essentially what happened here. According to the PSR: (1) "Hernandez provided everyone with cocaine"—including J.P., (2) "Hernandez [told J.P. that] she had to have sexual intercourse with [him] as payment for the cocaine," which was supplied to her for free, and (3) "Hernandez forced her to . . . use cocaine[] and held her against her will . . . ." These factual findings establish that the district court did not clearly err in finding that Hernandez unduly influenced J.P. to engage in prohibited sexual conduct.

Beyond that, Hernandez's claim that the PSR's findings are unreliable is meritless. Though a defendant may prove reversible error by showing that a sentencing court relied on inaccurate factual findings contained in a PSR, we have held that, to prove error, the defendant "must produce some evidence that calls the reliability or correctness of the alleged facts into question," and Hernandez has failed to satisfy this burden. *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quoting *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994)). Indeed, contrary to Hernandez's contentions, J.P.'s testimony at Clayton's trial regarding the extent to which Clayton provided her with cocaine does not contradict anything in the PSR.[1]

Even if Hernandez's arguments persuaded us, we would nonetheless affirm on the ground that Clayton's exercise of undue influence over J.P. can be imputed to Hernandez. Several circuits have held that, because the enhancement applies whenever "a *participant* . . . unduly influence[s] a minor to engage in prohibited sexual conduct," it is applicable to a defendant whose *co-defendant* subjects a minor to undue influence. USSG § 2G1.3(b)(2)(B) (emphasis added); *see, e.g.*, *United States v. Murray*, 653 F. App'x 714, 716 (11th Cir. 2016) (applying sentencing enhancement to

---

[1] To be sure, the fact that J.P. testified that she "did a lot of cocaine with Clayton" does not contradict the PSR's finding that Hernandez "provided everyone" with cocaine.

defendant when co-defendant committed acts constituting undue influence); *United States v. Brooks*, 610 F.3d 1186, 1199 (9th Cir. 2010) ("[E]ven if [defendant], who has been found criminally responsible for the crime, did not personally unduly influence the girls, he can be subject to the enhancement if another criminally responsible individual, such as [co-defendant], exercised the requisite undue influence.").

In this case, no one disputes that Clayton—a "participant" in Hernandez's offensive conduct—unduly influenced J.P. Clayton routinely provided J.P. with alcohol and drugs so as to lower her inhibitions and subject her to sexual exploitation for his own gain. As noted, he even held a gun to her head and forced her to use cocaine. Although Hernandez did not himself hold the gun to her head, another minor told investigators that Hernandez was present when Clayton held the gun to her head and J.P.'s. Imputing Clayton's actions to Hernandez, we find that Hernandez unduly influenced J.P. to engage in prohibited sexual conduct. *See, e.g.*, *Murray*, 653 F. App'x at 716.

**AFFIRMED**.